UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROY JONES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>          Plaintiff,<br><br>          vs.<br><br>PARTY CITY HOLDCO INC., MICHAEL A. CORREALE, AND JAMES M. HARRISON,<br><br>          Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff  Roy Jones ("Plaintiff") makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel, which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about Party City Holdco Inc. ("Party City" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company.

**<u>NATURE OF THE ACTION</u>**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Party City securities pursuant and/or traceable to the Company's Registration Statement(the "Registration Statement") and Prospectus ("the Prospectus") (collectively, the "Offering Documents") issued in connection with the Company's Initial Public Offering (the "IPO") on April 16, 2015, seeking to recover compensable damages caused by defendants' violations of federal securities laws and to pursue remedies under the Securities Act of 1933 (the "Securities Act").

2.       In the IPO, 21,875,000 of the Company's securities were priced at $17.00 per share for total proceeds of $371,875,000 million. On April 16, 2015, trading in the Company's shares on the NYSE opened at $20.50 per share.

3.       The Offering Documents contained misstatements of material fact and/or omissions. Namely, the Defendants were aware, and failed to disclose certain risks in the Offering Documents, including the impact on the Company due to: (1) soft consumer traffic trends; (2) lapping of the extraordinary performance of the Disney Frozen franchise from the prior year; and (3) the store reset initiative.

## JURISDICTION AND VENUE

4.       The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act, 15 U.S.C.  §§ 77k and 77(o). Section 22 of the Securities Act provides for jurisdiction over Securities Act claims in this Court.

5.       This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v(a).

6.       Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a).  Pursuant to 28 U.S.C. § 1391(d), Party City may be properly sued in any District in the United States, including the Eastern District of New York.  Moreover, many of the acts and transactions alleged herein, including the negotiation, preparation and dissemination of many of the material misstatements and omissions contained in the Registration Statement and Prospectus, filed in connection with the IPO, occurred in substantial part in the State. Additionally, the shares sold in connection with the IPO were actively marketed and sold in this State. Thus, venue is proper in this District.

7.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

8.      Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Party City securities, pursuant to or traceable to the Company's IPO and was economically damaged thereby.

9.      Defendant Party City is incorporated Delaware and headquartered in Elmsford, New York. Defendant Party City, through its subsidiaries, designs, manufactures, and distributes party supplies throughout North America.  The Party City stores sell costumes, novelties, gifts, and paper goods for parties and celebrations. Party City trades on the NYSE under the ticker "PRTY."

10.      Michael A. Correale ("Correale") is the Company's Chief Financial Officer. Correale signed the IPO Registration Statement.

11.      Defendant James M. Harrison ("Harrison") is the Company's Chief Executive Officer and Director.  Harrison signed the IPO Registration Statement.

12.      Defendants Correale and Harrison are collectively referred to herein as the "Individual Defendants."

13.      Defendants Party City and the Individual Defendants are collectively referred to herein as "Defendants."

## ALLEGATIONS OF FALSE STATEMENTS

14.      On January 1, 2014, Party City filed a Registration Statement on Form S-1 with the SEC.

15.     On April 10, 2015, Party City filed its eighth amendment to the Registration Statement on Form S-1/A with the SEC, which was signed by Defendants Correale and Harrison.

16.     On April 15, 2015, the SEC declared Party City's Registration Statement effective.

17.     On April 17, 2015, Party City filed the Prospectus with the SEC.

18.     In the IPO, 21,875,000 shares of Party City were sold at $17.00 per share. Total proceeds from the IPO were $371,875,000.

19.     The Offering Documents contained misstatements of material fact and/or omissions. Namely, the Defendants were aware, and failed to disclose certain risks in the Offering Documents, including the impact on the Company due to: (1) soft consumer traffic trends; (2) the extraordinary performance of the Disney Frozen franchise from the prior year; and (3) the store reset initiative.

## THE TRUTH BEGINS TO EMERGE

20.     On August 13, 2015, the Company held an earnings conference call. During the call, defendant Harrison stated, in part:

> ***Looking ahead to the second half of the year, we expect the first part of the third quarter to face several challenges. First, we'll be lapping sales of Disney Frozen licensed product, which had strong initial load and demand last year.***
>
> While the everyday nature of our business typically means that we're not as susceptible to the volatility associated with trends or fads as most businesses, in the case of the very successful Disney Frozen franchise, the lack of product availability early in 2014, combined with the growing popularity of this license, resulted in a cumulative catchup of demand in early Q3 2014, as customers rushed to buy the product. ***Additionally, currently, we've been also remerchandising our stores to highlight more productive categories, and the implementation of these visual merchandising changes has created some temporary disruption in stores.*** We expect to complete these changes well before the start of the Halloween selling season.
>
> (emphasis added).

21.     On this news, shares of Party City fell $0.97 per share or more than 5% from its

previous closing price to close at $17.92 per share on August 14, 2015, damaging investors.

22.     On November 12, 2015, the Company issued a press release entitled "Party City

Announced Financial Results for the Third Quarter of 2015 and Brand Comparable Sales for the

Fiscal October 2015," which was attached to a Form 8-K the Company filed that same day. The

press release provided the following highlights, stating in relevant part:

> James M. Harrison, Chief Executive Officer, stated: "While third *quarter retail
> results were weaker than expected*, we are pleased with our Halloween performance,
> especially in light of bearish industry predictions. Our expanded Halloween product
> assortments, unique, proprietary designs, effective marketing and social medial
> efforts all drove these strong results during the most important season for our retail
> operations."
>
> Mr. Harrison added, "As we move into the year-end holiday season, we remain the
> destination of choice for shoppers looking for holiday decor and entertaining options
> to celebrate with family and friends. Looking ahead, we will also continue to execute
> on our strategic initiatives that are driving growth in our wholesale business,
> including integrating our new ACIM acquisition, driving international sales and
> capturing new alternative market customers."
>
> **Highlights for the quarter ended September 30, 2015:**
> Total revenues of $555.4 million increased by 2.3% or 4.9% on a constant currency
> basis compared to the third quarter of fiscal 2014.
>
> - Retail sales increased 4.1% to $339.5 million, or 5.3% on a constant currency
>   basis. This was driven in part by a fiscal calendar shift that resulted in more
>   Halloween shopping days falling into the third quarter this year, as well as 17
>   net new stores added in the past twelve months. This was partially offset by
>   the lower brand comparable sales noted below. (Note: For our Retail business
>   3Q15 ended on October 3rd and 3Q14 ended on September 27th)
>
> - *Brand comparable sales decreased by 3.6% principally due to lapping
>   strong sales of Frozen merchandise in the prior year quarter, temporary
>   disruption resulting from store resets and soft traffic trends.*
>
> - Net third-party wholesale revenues (including sales to our Party City
>   franchise stores) decreased 0.3% to $211.9 million as negative foreign
>   currency impacts of $10 million and the elimination of $5 million of U.S.
>   Balloon intercompany sales were offset by stronger international sales. On a
>   constant currency basis, net third-party wholesale revenues increased 4.4%.

5

(emphasis added).

23.     On November 12, 2015, the Company also held an earnings conference call to discuss

the earnings from the third quarter of 2015. During the conference call, Defendant Harrison stated in

relevant part:

> For the third quarter, global retail sales of $339 million was up 4.1% over the same
> quarter in 2014 and 5.3% when adjusted for currency. *These sales results were
> adversely affected by the lapping of the strong Frozen license in the prior year
> period and the disruption caused by a major store resets, both of which we
> discussed during our second quarter call.*
>
> *Additionally, we saw an exceptionally soft retail environment which accelerated in
> the latter part of the quarter. All of these factors culminating in a disappointing
> third quarter retail comp store revenue result.*
>
> *     *     *
>
> I think if we look at our performance for June, July, and August and September*, we
> see that traffic in retail generally slowed down in July, more so in August and even
> more so in September.* If we look at our comps over those three months, there was
> just a general softening in retail generally.
>
> *     *     *
>
> Yes. I think your other question about what we can do to make the stores or help the
> stores handle that sort of later shopper. One of the things we did this year, and Gregg
> and his team did this year, was add substantial payroll to our stores the last 10 days
> of the season, *because we saw this coming in terms of the delay and we saw the
> consumer not shopping*.

(emphasis added).

24.     On the same conference call, Gregg A. Melnick, Party City's President, stated in

relevant part:

> But at the same time, we're also experiencing consumer traffic trends below
> expectations related to last year's Frozen phenomenon and potentially the more
> macro pressures which continue to negatively impact traffic across the specialty
> retail sector.

*Looking at our Q3 sales results, the shortfall can be explained by essentially three factors. First, as we discussed in our second quarter call, in July and August, we underwent a significant store reset initiative to remove the costume shop wall from the back of our stores and open up access to improve our shopping experience.*

We completed this initiative in late August and the disruption is now behind us. When all said and done, we estimate that this disruption impacted Q3 by at least one full point in brand comp and will have at least a 25 basis point negative impact on the brand comp for the full year.

*Second, last year's Frozen phenomenon created an anomaly in our business.* As a party specialty retailer, our consumers generally come to our stores as a destination purchaser of party supplies in connection with a specific celebration or party.

However, *last year's traffic included shoppers with a different motivation. Moms wanted to buy products incorporating the Frozen images and themes because of the popularity of the franchise and not necessarily because they were having a celebration.*

*Now while we recognized this in our previous full year outlooks, we significantly underestimated its impact. For the quarter, we estimate that year-over-year impact that we felt from Frozen was probably as much as 150 basis points above what we had originally anticipated.*

And finally, as the quarter progressed, we saw retail in general soften and our Halloween customer delay their purchases.

(emphasis added).

25.     On this news, shares of Party City fell $1.75 per share or more than 11% from its previous closing price to close at $14.88 per share on November 12, 2015, further damaging investors.

26.     As of November 17, 2015, the last trading day prior to filing of this action, Party City's shares closed at $11.80, which is approximately $5.20 per share or over 30% below than the IPO price.

27.     As a result of Defendants' false and/or misleading statements, the Company's stock traded at inflated prices.   However, after disclosure of Defendants' false and/or misleading

statements, the Company's stock suffered a precipitous decline in value, thereby causing significant losses and damages to Plaintiff and other class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action on behalf of himself and on behalf of all purchasers of Party City securities pursuant to and/or traceable to the Company's false and misleading Registration Statement and Prospectus issued in connection with its IPO and who were damaged thereby (the "Class"), pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class. Excluded from the Class are Defendants herein, members of the immediate family of each of the Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

29.     The members of the Class are so numerous that joinder of all members is impracticable. 21,875,000 shares were sold in the IPO which were then actively traded on the NYSE.  The precise number of the Class members is unknown to Plaintiff at this time but it is believed to be in the thousands.  Members of the Class may be identified from records maintained by Party City or its transfer agent or the underwriters to the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in securities class actions.

30.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

31.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

32.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class.

33.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether the Prospectus and Registration Statement issued by Defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts concerning Party City and its business; and

(c)     the extent of injuries sustained by members of the Class and the appropriate measure of damages.

## COUNT 1

### Violation of Section 11 of the Securities Act

9

**Against All Defendants**

35.     Plaintiff repeats and realleges each and every allegation contained above.

36.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

37.     Party City is the registrant for the IPO. The Individual Defendants are responsible for the contents of the Registration Statement based upon their status as directors of the Company or because they signed or authorized the signing of the Registration Statement on their behalf pursuant to Sections 11(a)(1)-(3) of the Securities Act.

38.     As issuer of the shares, Party City is strictly liable to Plaintiff and the Class for the misstatements and omissions.

39.     Party City is strictly liable for the contents of the Registration Statement. The Individual Defendants failed to make a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

40.      By reasons of the conduct herein alleged, each Defendant named in this Count violated Section 11 of the Securities Act.

41.     Plaintiff acquired Party City shares pursuant to the Registration Statement.

42.     Plaintiff and the Class have sustained damages. The value of Party City shares has declined substantially subsequent to and due to Defendants' violations.

43.     At the times Plaintiff purchased Party City shares, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to the IPO. Less than one year has elapsed

from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than three years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II

### Violations of Section 15 of the Securities Act
### Against Individual Defendants

44.     Plaintiff repeats and realleges each and every allegation contained above.

45.     This claim is asserted against the Individual Defendants, each of whom was a control person of Party City during the relevant time period.

46.     For the reasons set forth above in the First Claim, above, Party City is liable to the Plaintiff and the members of the Class who purchased Party City shares in the IPO based on the untrue statements and omissions of material fact contained in the Registration Statement and Prospectus, pursuant to Section 11 of the Securities Act, and were damaged thereby.

47.     The Individual Defendants were control persons of Party City by virtue of, among other things, their positions as senior officers of the Company, and they were in  positions to control and did control, the false and misleading statements and omissions contained in the Registration Statement and Prospectus.

48.     None of the Individual Defendants made reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and Prospectus were accurate and complete in all material respects.  Had they exercised reasonable care, they could have known of the material misstatements and omissions alleged herein.

49.     This claim was brought within one year after the discovery of the untrue statements

and omissions in the Registration Statement and Prospectus and within three years after Party City

shares was sold to the Class in connection with the IPO.

50.     By reason of the misconduct alleged herein, for which Party City is primarily liable,

as set forth above, the Individual Defendants are jointly and severally liable with and to the same

extent as Party City pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief

as follows:

(a)  declaring this action to be a proper class action, designating plaintiff as Lead

Plaintiff and certifying plaintiff as a class representative under Rule 23 of the

Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead

Counsel;

(b)  awarding  damages in favor of plaintiff and the other Class members against all

defendants, jointly and severally, together with interest thereon;

(c)  awarding plaintiff and the Class reasonable costs and expenses incurred in this

action, including counsel fees and expert fees; and

(d)  awarding plaintiff and other members of the Class such other and further relief as

the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 18, 2015                    Respectfully submitted,

                                            **THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
Phillip Kim, Esq. (PK 9384)
Laurence Rosen, Esq. (LR 5733)
275 Madison Avenue, 34th Floor
New York, NY  10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com


**GOLDBERG LAW PC**
Michael Goldberg, Esq.
13650 Marina Pointe Dr. Suite 1404
Marina Del Rey, CA 90292
Phone: 1-800-977-7401
Fax: 1-800-536-0065

Counsel for Plaintiff